23515

SOUTHERN MUTUAL CHURCH INSURANCE COMPANY, Appellant v. SOUTH CAROLINA WINDSTORM AND HAIL UNDERWRITING ASSOCIATION, Respondent.

(412 S.E. (2d) 377)

Supreme Court

*David B. Betts,* Chapin, *for appellant.*

*James C. Gray, Jr.,* and *B. Rush Smith, III,* of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent.*

Heard Oct. 31, 1991.

Decided Dec. 2, 1991.

HARWELL, Justice:

Appellant Southern Mutual Church Insurance Company (Southern Mutual) appeals from the order of the trial judge granting summary judgment to respondent South Carolina Windstorm and Hail Underwriting Association (Association). The sole issue on appeal is whether the trial judge erred in holding that Southern Mutual was not exempt from participation in the Association. We affirm.

## I. FACTS

The legislature created the Association in 1971 to ensure that windstorm and hail insurance would be available in the coastal regions of South Carolina. *See* S.C. Code Ann §§ 38-75-310 - 38-75-460 (1989). All authorized property insurers in South Carolina are members of the Association and share expenses, profits, and losses of the Association. By statute, in-

surers whose "writings are limited to property wholly owned by parent, subsidiary, or allied organizations" are excluded from participation in the Association. S.C. Code Ann. § 38-75-330 (1989).

Southern Mutual is a domestic mutual insurance company created in 1928 to insure property owned by churches. Originally intended to insure the property of Baptist churches, Southern Mutual now writes insurance in South Carolina and Georgia for property owned by various Protestant denominations. Southern Mutual has been a member of the Association since the Association's inception, and has participated in the business of the Association by paying assessments and receiving profit distributions. Southern Mutual first requested exemption from participation in the Association in 1974, but this request was denied. Southern Mutual again requested an exemption in 1987, but this request was denied.

Following the major destruction caused by Hurricane Hugo in 1989, the Association was required to assess its members in order to pay losses under its policies. Southern Mutual was assessed $1,020,200.00 as its pro rata share of anticipated losses. Subsequent to this assessment, Southern Mutual again sought an exemption from participation in the Association. After its request was denied, Southern Mutual paid the assessment under protest and commenced a declaratory judgment action seeking a declaration that it was exempt from participation in the Association and was, therefore, entitled to a refund of the $1,020,200.00. Both parties moved for summary judgment. The trial judge granted the Association's motion for summary judgment. Southern Mutual appeals.

## II. DISCUSSION

The statute creating the Association and excluding certain insurers from participation provides as follows:

> There is created the South Carolina Windstorm and Hail Underwriting Association, consisting of all private insurers authorized to write and engage in writing property insurance within this State on a direct and statewide basis, *but excluding insurers whose writings are limited to property wholly owned by parent, subsidiary, or allied organizations.* Every such insurer must be a member of

the Association and must remain a member of the Association so long as the Association is in existence as a condition of its authority to continue to transact the business of insurance in this State.

S.C. Code Ann. § 38-75-330-(1989) (emphasis added).[1]

Southern Mutual contends that it should be excluded from participation in the Association because it writes insurance for property wholly owned by churches, which are "allied" through the gospel, and are therefore "allied organizations" within the meaning of Section 38-75-330. The Association contends that the term "allied organizations" refers to organizations allied with the insurer through some form of ownership or control and not to organizations allied with one another. We agree.

Section 38-75-330 does not define the term "allied organizations." Consequently, we must utilize principles of statutory construction in order to ascertain the legislature's intent as to the meaning of this term.

Clearly, words in a statute must be construed in context. *Hancock, v. Southern Cotton Oil Co.*, 211 S.C. 432, 45 S.E.2d 850 (1947). According to the doctrine of *noscitur a sociis*, the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute. 73 Am. Jur. (2d) *Statutes*, § 213 (1974). We have previously stated that "[t]he Court may not, in order to give affect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent." *Creech v. S.C. Public Service Commission*, 200 S.C. 127, 138, 20 S.E. (2d) 645, 649 (1942). Thus, in ascertaining the meaning of the term "allied organizations", we must look to the other terms in the statute, especially the other terms in the exclusionary clause.

---

[1] Section 38-75-330 was amended in 1990. The statute in its revised form includes an exclusion for insurers whose writings are limited to property wholly owned by religious organizations. However, this amendment did not become effective until May 14, 1990, and consequently is not applicable to this case.

The exclusionary clause states that it applies to insurers who insure property wholly owned by parent, subsidiary, or allied organizations. According to the doctrine of *noscitur a sociis* the meaning of the term "allied organizations" may be ascertained by reference to the words associated with this term, "parent" and "subsidiary". Southern Mutual concedes that the terms "parent" and "subsidiary" imply some relationship between the insurer and the insured. Thus, insurers that write insurance for property wholly owned by the parent organization of the insurer or owned by a subsidiary organization of the insurer are excluded from participation in the Association. Further, according to a contextual interpretation of the terms in the exclusionary clause, insurers that write insurance only for property wholly owned by an organization allied with the insurer are excluded from participation in the Association. Any other interpretation of the term "allied organizations" would be improper because it would destroy the context in which the term appears.

In addition, since the terms "parent" and "subsidiary" are terms which connote ownership, it can reasonably be assumed that the term "allied organizations" refers to organizations allied with an insurer through ownership. Thus, fundamental rules of statutory construction demonstrate that the "allied organizations" exclusion is available only to insurers that write insurer through some form of ownership and control. The exclusion does not apply to organizations that are merely "allied" with one another.

The relationship between Southern Mutual and each of its insureds is simply that of insurer and insured. Southern Mutual and its insureds are not, therefore, "allied organizations" within the meaning of Section 38-75-330. Accordingly, Southern Mutual is not entitled to be exempt from participation in the Association under the "allied organizations" exclusion. The order of the trial judge is

Affirmed.

CHANDLER, FINNEY and TOAL, JJ., and JOHN P. GARDNER, Acting Associate Justice, concur.