682 S.E.2d 809

Jean McMurray HILL, Trustee of the Jean
M. Hill Revocable Trust, Appellant,

v.

YORK COUNTY NATURAL GAS AUTHORITY, Respondent.

Thomas E. Fitz, Jr., Frances Fitz Gaines, John Gregory
Fitz, and Joseph Daniel Fitz, II, Appellants,

v.

York County Natural Gas Authority, Respondent.

Thomas E. Fitz, Jr., Frances Fitz Gaines, John Gregory
Fitz, and Joseph.Daniel Fitz, II, Appellants,

v.

York County Natural Gas Authority, Respondent.

Madison C. Martin and Elizabeth Martin, Appellants,

v.

York County Natural Gas Authority, Respondent.

Irby Carlyle McGill, a/k/a Carlyle McGill, Appellant,

v.

York County Natural Gas Authority, Respondent.

Carlyle McGill, Appellant,

v.

York County Natural Gas Authority, Respondent.

Myrtle Petty, Appellant,

v.

York County Natural Gas Authority, Respondent.

Carlyle McGill, Appellant,

v.

York County Natural Gas Authority, Respondent.

Harry J. Callahan, Jr. and Beverly S. Callahan, Appellants,

v.

York County Natural Gas Authority, Respondent.

No. 26713.

Supreme Court of South Carolina.

Heard June 23, 2009.

Decided Aug. 31, 2009.

484

A. Camden Lewis and Ariail E. King, both of Lewis & Babcock, of Columbia, and Alford Haselden, of Haselden, Owen & Boloyan, of Clover, for Appellants.

W. Mark White and W. Chaplin Spencer, Jr., both of Spencer & Spencer, of Rock Hill, for Respondent.

PER CURIAM.

A group of York County landowners challenge the power of the York County Natural Gas Authority to condemn land to construct a natural gas transmission pipeline. The landowners appeal from the trial court's determination that the York County Natural Gas Authority has the statutory authority to condemn their property and construct the pipeline. We affirm.

In July 2006, the York County Natural Gas Authority commenced proceedings to condemn real property in York County for the purpose of constructing a natural gas transmission pipeline. Eleven of the affected property owners (Landowners) answered the notice of condemnation by filing a complaint in August 2006 challenging the authority of the York County Natural Gas Authority to condemn their real property. The case went to trial under various causes of action, and the trial court found that the York County Natural Gas Authority had the authority to condemn Landowners' property.

## ISSUES

Landowners appeal, raising two issues for review:
1) "The evidence and statutory interpretation do not support the [trial] court's findings that Blacksburg is a new

source and thus, that Respondent did not exceed its authority under the Enabling Act."

2) "The trial court erred in finding that the Notices of Condemnation based on incorrect statutory authority can be amended."

## DISCUSSION

### I.

The York County Natural Gas Authority (Authority) is a special purpose district and corporate entity created by Act No. 959 of 1954. In 1957, by Act No. 694, section 1 of the original Act was amended to read as follows:

It shall be the function of the authority to purchase, lease, acquire, build, construct, maintain and operate natural gas distribution systems within the service area hereinafter defined and such transmission lines as may be necessary to transport natural gas to the distribution systems from the transmission lines to be constructed by [South] Carolina Pipeline Company *or other sources from which natural gas may now or hereafter become available* ....

Act No. 694, 1957 S.C. Acts 1427 (emphasis added). By Act No. 193, which became effective on June 12, 1995, the Act was amended in several respects, including expansion of the Authority's service area beyond York County. Section 1 of the Act was amended to read as follows:

It is the function of the authority to purchase, lease, acquire, build, construct, maintain, and operate natural gas distribution systems within the service area defined in this act and such transmission lines as may be necessary to transport natural gas to the distribution systems from the transmission lines owned by South Carolina Pipeline Company *or other sources from which natural gas may become available after the effective date of this act.*

Act No. 193, 1995 S.C. Acts 1569 (emphasis added).

Because the outcome of this case turns on the meaning of the statutory term "other sources," we need not delve extensively into the detailed factual history prior to the 1995 Act, including the Authority's once exclusive reliance on the South Carolina Pipeline Company (SCPC) and the reasons that prompted a change in that relationship. We simply note the

Authority joined with its sister special purpose districts in Lancaster and Chester counties to form a joint agency called Patriots Energy Group (PEG) pursuant to the Joint Agency Act.[1] The goal of PEG was to "enable these natural gas special purpose districts to jointly undertake the acquisition and construction of natural gas facilities."

Under the authority provided in the Joint Agency Act, PEG issued bonds to cover its acquisition and construction costs. One of PEG's construction projects was to integrate its transmission system with the Town of Blacksburg's natural gas system. Blacksburg is in Cherokee County. Blacksburg is connected to the Transcontinental Pipeline Corporation's interstate pipeline (the Transco pipeline).[2] Thus, linking in with Blacksburg's natural gas system would allow the Authority (and its sister authorities, all under the umbrella of PEG) to connect to the Transco pipeline.

Pursuant to this plan PEG and Blacksburg entered into a capacity sharing agreement. The agreement included upgrading five miles of Blacksburg's system from Blacksburg, eastward to the Town of Kings Creek. This upgrade, which has been completed, involved replacing the existing 6–inch distribution line with an 8–inch high-pressure steel transmission pipeline.

In order to link up with the pipeline at Kings Creek, the Authority began condemnation proceedings (the proceedings being challenged in this lawsuit) to acquire rights-of-way to lay down 42.2 miles of 12–inch steel transmission pipeline. The transmission pipeline will run from Kings Creek, eastward across York and Chester Counties.

Landowners challenge the Authority's power of eminent domain, contending the connection to the Blacksburg natural gas system and the Transco pipeline is not statutorily authorized. Specifically, Landowners rely on that part of Act 193 that restricts the Authority to "other sources from which natural gas may become available after the effective date of this act." The Act became law on June 12, 1995. Because the

---

1. S.C.Code Ann. §§ 6–24–10 to –300 (Supp.2008).

2. The Transco pipeline is one of the primary pipelines providing natural gas to our state. It originates in the Gulf of Mexico and runs through the Southeast then up into New England.

Transco pipeline existed prior to June 1995, Landowners contend the Authority lacks statutory authorization to connect to the Transco pipeline and thus may not condemn their property.

The trial court did not read "other sources" so narrowly. The trial court noted that, "[t]he Act references the pre–1995 sources as 'the transmission lines owned by South Carolina Pipeline Company.' The source is not the South Carolina Pipeline Company, but rather its transmission lines."

In discerning legislative intent, "[a]ll rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002). "[W]ords in a statute must be construed in context.... [T]he meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute." *S. Mut. Church Ins. Co. v. S.C. Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991) (internal citations omitted). "The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

Beginning with the premise that a source means transmission lines, the trial court went on to note that prior to the upgrade of the 5–mile pipeline from Blacksburg to Kings Creek, the 5–mile pipeline was a distribution line. After the upgrade, the pipeline became a transmission line. The trial court noted "[t]he evidence demonstrates that the Town of Blacksburg was not an available source for transportation capacity to [the Authority] prior to June 12, 1995. After the 1995 Act, the Town of Blacksburg upgraded and expanded its system." Therefore, the trial court found "[t]he upgrade of the existing distribution line to a high pressure transmission line provides the Town of Blacksburg with the capacity to transport gas to [the Authority's] system. Accordingly, the Town of Blacksburg became an available source within the meaning of the 1995 Act upon completion of the upgraded line."

The Authority takes no issue with the temporal limitation imposed by Act 193. The Authority responds that "Blacksburg's system was not capable of providing PEG or [the Authority] with transportation services prior to 1995. The construction upgrades from a distribution line did not even occur until 2004 or 2005."

When construing Act 193 in its entirety, we are persuaded the result reached by the circuit court is the correct one. We believe the Legislature did not intend "other sources" in the restrictive manner urged by Landowners. We first recognize the Legislature stated that "[i]t is the intent of this legislation to provide a means of ensuring that reasonably priced natural gas service is available to all citizens who desire the service within the service area of the authority." Act No. 193 at 1574. We next recognize, as did the trial court, the phrase immediately preceding "other sources" grants to the Authority the power to construct and operate "natural gas distribution systems ... from the *transmission lines* owned by South Carolina Pipeline Company." Act No. 193 at 1569 (emphasis added). We construe "other sources" as referring to transmission lines, consistent with the trial court's interpretation.

The balance of Act 193 supports this interpretation. For example, section 2 provides the following:

> The service area of the authority includes all of York County and each municipality within the county, all the Town of Smyrna to include that portion of the town which is within the boundaries of Cherokee County, and that portion of Cherokee County beginning at the intersection of the Broad River, the York County line, and the Cherokee County lines; extending in a northwesterly direction along the center line of the Broad River to the center of the Transcontinental Gas Pipeline Corporation's [Transco's] right-of-way; thence in a northeasterly direction along the center line of the Transcontinental Gas Pipeline Corporation's right-of-way to its intersection with the North Carolina state line; thence east along the common boundary of North Carolina and Cherokee County to the York County line.

Act No. 193 at 1569–70.

The Act further provides:

Those areas in Cherokee County, which may now or in the future be served by the Blacksburg municipal system, must be excluded from the [A]uthority's distribution system, *but may be served by its transmission system.*

(B) The Town of Blacksburg owns and operates a gas system which is capable of providing gas service to the portion of the service area of the [A]uthority in Cherokee County except for the portion located in the Town of Smyrna. The town is responsible for the distribution of gas to end users located in such service area and may supply this gas service either through its transmission lines and distribution lines *or by connecting its distribution lines to the transmission lines of the [A]uthority* upon the payment of a reasonable tap fee and a reasonable transportation charge to the [A]uthority for the use of its transmission lines.

Act No. 193 at 1570 (emphasis added).

The Authority and Blacksburg have acted in accordance with this statutory authorization.

■ The interpretation advanced by the Landowners would create an irreconcilable conflict in the Act. Consequently, we construe the term "other sources" in a manner that reconciles and harmonizes the language with other provisions of the Act. *See Hitachi Data,* 309 S.C. at 178, 420 S.E.2d at 846 ("The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose."); *see also S. Mut. Church Ins.,* 306 S.C. at 342, 412 S.E.2d at 379 (noting that the "Court may not, in order to give [e]ffect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent"). This result further gives efficacy to the Joint Agency Act. Because Blacksburg's system was not capable of providing PEG (or the Authority) with transportation services prior to June 1995, the post-June 1995 addition of the transmission pipeline from Blacksburg to Kings Creek made the Blacksburg system an available source under the Act. In view of the statutory authorization, the Authority is empowered to condemn the subject properties.

## II.

Landowners' final challenge concerns the trial court's failure to dismiss the condemnation proceedings based on the incorrect statutory authority referenced in the original condemnation notices. The trial court ruled that the Authority's "failure to cite the proper statutory authority in the Notice of Condemnation may be appropriately redressed by an amendment to the notice." We observe that no party was prejudiced by the reference to the incorrect statutory reference, for all parties were well aware of the central dispute concerning legislative intent in Act 193. Moreover, Landowners concede that under Act 193 the Authority has the power to condemn property. We affirm the trial court pursuant to Rule 220(b)(1), SCACR.

### *CONCLUSION*

For the reasons stated, the judgment of the trial court is **AFFIRMED.**

TOAL, C.J., WALLER, BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.