PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SOUTH CAROLINA GREEN PARTY;
EUGENE PLATT; ROBERT DUNHAM,

       *Plaintiffs-Appellants,*

        v.

SOUTH CAROLINA STATE ELECTION
COMMISSION; JOHN H. HUDGENS, in
their official capacities as
members of the South Carolina
State Election Commission;
CYNTHIA M. BENSCH, in their
official capacities as members of
the South Carolina State Election
Commission; TRACEY C. GREEN, in
their official capacities as
members of the South Carolina
State Election Commission;
PAMELLA B. PINSON, in their
official capacities as members of
the South Carolina State Election
Commission; THOMAS WARING, in
their official capacities as
members of the South Carolina
State Election Commission;
CHARLESTON COUNTY DEMOCRATIC
PARTY,

       *Defendants-Appellees.*

No. 09-1915

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Cameron McGowan Currie, District Judge.
(3:08-cv-02790-CMC)

Argued: May 11, 2010

Decided: July 20, 2010

Before KEENAN, Circuit Judge, HAMILTON, Senior Circuit Judge, and Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Senior Judge Hamilton and Judge Wilson joined.

---

## COUNSEL

**ARGUED:** Bryan Sells, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Atlanta, Georgia, for Appellants. Andrew Lindemann, DAVIDSON, MORRISON & LINDE-MANN, PA, Columbia, South Carolina, for Appellees. **ON BRIEF:** Laughlin McDonald, AMERICAN CIVIL LIBER-TIES UNION FOUNDATION, Atlanta, Georgia, for Appellants. Matthew T. Richardson, WYCHE, BURGESS, FREEMAN & PARHAM, P.A., Columbia, South Carolina, for Appellee Charleston County Democratic Party.

---

## OPINION

KEENAN, Circuit Judge:

Eugene Platt and the South Carolina Green Party challenge the constitutionality of South Carolina's "sore-loser" statute, S.C. Code § 7-11-10, as applied to Platt's Green Party candidacy for South Carolina House Seat 115.[1] The district court

---

[1]Although the 2008 general election for South Carolina House Seat 115 has passed, the challenge to South Carolina's sore-loser statute is not moot

upheld the constitutionality of the statute as applied to Platt's candidacy and, for the following reasons, we affirm.

I.

In 2008, Platt sought to become a fusion candidate[2] in the election for South Carolina House Seat 115, seeking the nomination of three political parties, the South Carolina Democratic Party (Democratic Party), the South Carolina Green Party (Green Party), and the South Carolina Working Families Party (Working Families Party). On March 17, 2008, Platt filed a statement of intention of candidacy with the Democratic Party. Ten days later, he filed a similar statement with the Working Families Party.

On May 3, 2008, Platt filed an additional statement of candidacy with the Green Party. That same day, the Green Party chose Platt as its nominee during a state convention. On May 10, 2008, the Working Families Party chose Platt as its nominee.

On June 10, 2008, Platt lost the Democratic Party primary election. After Platt's loss in the primary, the South Carolina State Election Commission (the Election Commission) notified Platt that based on South Carolina's sore-loser statute, S.C. Code § 7-11-10, his name could not appear on the ballot for the general election as the nominee for the Green Party or for the Working Families Party. The statute provides, in relevant part:

    [N]o person who was defeated as a candidate for

---

because it presents issues that are "capable of repetition, yet evading review." *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974).

[2]Electoral fusion is a practice that allows a candidate to appear on a general election ballot as the nominee of more than one certified political party and to receive the total number of votes cast for that candidate.

> nomination to an office in a party primary or party convention shall have his name placed on the ballot for the ensuing general or special election . . . .

S.C. Code § 7-11-10.

Platt, along with the Green Party and Robert Dunham, a registered South Carolina voter who supported Platt, (collectively, the plaintiffs) filed an action against the Election Commission and various other defendants (collectively, the Election Commission), asserting that application of the sore-loser statute violated the Green Party's rights of association protected by the First and Fourteenth Amendments. After the parties filed cross-motions for summary judgment, the district court granted summary judgment in favor of the Election Commission and denied the plaintiffs' motion, holding that the sore-loser statute is constitutional as applied to Platt's Green Party candidacy.

On appeal, the plaintiffs argue that the sore-loser statute is unconstitutional when applied to the Green Party's nominee, Platt, because he successfully secured the nomination of the Green Party before losing his attempt to become the Democratic Party nominee. According to the plaintiffs, application of the sore-loser statute to bar Platt's name from the general election ballot as the Green Party's candidate imposed a severe burden on the Green Party's association rights. The plaintiffs contend that application of the statute effectively permitted the Democratic Party primary voters to "veto" the Green Party's preferred candidate and prevented the Green Party from nominating a substitute candidate. Notably, the plaintiffs do not argue that Platt's individual rights of association have been affected by the Election Commission's application of the sore-loser statute.

The plaintiffs ask that we apply a strict scrutiny review to their claim in light of the allegedly severe burden imposed on the Green Party's association rights. The plaintiffs contend

that when a strict scrutiny standard is used, the sore-loser stat-
ute is unconstitutional as applied because the statute is not
narrowly tailored to advance South Carolina's interest in min-
imizing excessive factionalism. As a result, the plaintiffs
maintain, this Court should hold that the statute is unconstitu-
tional as applied to Platt's candidacy with the Green Party.

In response, the Election Commission argues that the Green
Party's association rights were not severely burdened and,
therefore, strict scrutiny should not apply to our review of the
sore-loser statute. The Election Commission contends that
Democratic primary voters did not effectively "veto" the
Green Party's selection of Platt as its nominee because Platt's
decision to run in the Democratic primary, rather than any
interference by Democratic voters, placed him at risk of dis-
qualification as the Green Party nominee. According to the
Election Commission, South Carolina's sore-loser statute
serves to promote several important state regulatory interests.
Thus, the Election Commission asks that we hold that the
sore-loser statute is constitutional as applied to Platt's Green
Party candidacy.

## II.

Our standard of review is well established. We review a
grant of summary judgment de novo. *News & Observer
Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570,
576 (4th Cir. 2010).

## A.

The First Amendment, as incorporated against the states by
the Fourteenth Amendment, protects the rights of individuals
to associate for the advancement of political beliefs and ideas.
*Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973). These rights
include the freedom for individuals to "band together" in
political parties to promote electoral candidates who support
their political views. *Cal. Democratic Party v. Jones*, 530

U.S. 567, 574 (2000). Such political parties have a right to choose their "standard bearer" in the form of a nominee. *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989).

When analyzing whether a state election law impermissibly infringes on association rights protected by the First and Fourteenth Amendments, courts must "weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Regulations that impose a severe burden on association rights are subject to strict scrutiny, and a court applying this level of review may uphold the regulation only if it is "narrowly tailored and advance[s] a compelling state interest." *Id.* However, if a statute imposes only modest burdens, then "a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

Decisions in previous cases have recognized the various state interests furthered by sore-loser statutes. In *Storer v. Brown*, 415 U.S. 724, 735 (1974), the Supreme Court addressed a California sore-loser provision, and emphasized the importance of sore-loser statutes in discouraging intraparty feuding and in reserving "major struggles" for general election ballots. *See also Backus v. Spears*, 677 F.2d 397, 399-400 (4th Cir. 1982). The Supreme Court later explained, in *Clingman v. Beaver*, 544 U.S. 581, 596 (2005), that sore-loser statutes prevent a candidate who has lost a party primary or nomination from effecting a "splinter" of a major political party, by joining a minor party while retaining the support of the major party's voters, thereby undermining the major party in the general election.

We have recognized that South Carolina's sore-loser statute is "substantially identical" to California's sore-loser provision discussed in *Storer*. *Backus*, 677 F.2d at 400. We further have stated that South Carolina's sore-loser statute is a "justifiable measure[ ] for preventing splintering and factionalism within the major parties." *Cromer v. South Carolina*, 917 F.2d 819, 825 (4th Cir. 1990). In the context of these statements, we consider the constitutionality of South Carolina's sore-loser statute as applied to the Green Party's association rights.

### B.

We first address whether the South Carolina sore-loser statute placed a severe burden on the Green Party's right to choose its own candidate. The plaintiffs argue that the burden imposed by the statute is severe, because Platt's loss in the Democratic primary occurred after the Green Party nominated Platt and was unable to select a replacement candidate. The plaintiffs contend that the burden imposed on its association rights to choose a "standard bearer" is no less severe than the burden imposed by the California law at issue in *Jones*, 530 U.S. 567. We disagree with the plaintiffs' arguments.

The law invalidated by the Supreme Court in *Jones* mandated a "blanket" primary election in which voters, regardless of party affiliation, were permitted the right to vote for a nominee of a different party. *Id.* at 570. The Supreme Court held that California's blanket primary imposed a severe burden on political parties' freedom of association, because this type of primary permitted members of one political party to participate in the selection of a nominee for another rival political party. *Id.* at 577.

In contrast, the Supreme Court held in *Timmons* that Minnesota's ban on electoral fusion did not severely burden a political party's association rights. 520 U.S. at 363. The applicable Minnesota laws prohibited a candidate from appearing on the general election ballot as the candidate for more than

one political party. *Id.* at 354. The Supreme Court explained that a party's association rights are not severely burdened when a particular individual is barred from the ballot as that party's candidate. *Id.* at 359. In refusing to apply strict scrutiny review to the "fusion ban," the Supreme Court noted that the challenged laws did "not restrict the ability of the [party] and its members to endorse, support, or vote for anyone they like." *Id.* at 363. The Court observed that the party remained "free to try to convince" its nominee to refrain from seeking the nomination of another political party. *Id.* at 360.

Applying these principles, we conclude that the burden the sore-loser statute placed on the Green Party's association rights is not severe. Unlike the blanket primary in *Jones*, the South Carolina sore-loser statute did not force the Green Party "to have [its] nominees, and hence [its] positions" determined by members of other political parties. *See Jones*, 530 U.S. at 577. The Green Party retained the right to select Platt, or any other candidate, at its state convention. It was Platt's own decision to seek the Democratic Party's nomination, not interference by members of the Democratic Party in the Green Party's nomination process, that affected the Green Party's ability to retain Platt on the general election ballot as its preferred nominee. In addition, the Green Party was "free to try to convince" Platt to refrain from seeking the nomination of another political party. *See Timmons*, 520 U.S. at 360.

As the Supreme Court held in *Timmons*, the fact "[t]hat a particular individual may not appear on the ballot as a particular party candidate does not severely burden that party's association rights." *Id.* at 359. Thus, we conclude that although the sore-loser statute prevented the Green Patty from having its preferred nominee on the ballot, this result did not, of itself, create a severe burden on the Green Party's association rights. *See id.*

The plaintiffs contend, however, that they were not merely denied their choice of preferred candidate but also were

denied the right to name a substitute candidate because Platt was not "disqualified" as the Green Party candidate, within the meaning of South Carolina Code § 7-11-50. According to the plaintiffs, because Platt could have been elected as a "write-in" candidate in the general election, he was not "disqualified" from appearing on the general election ballot. We disagree with the plaintiffs' interpretation of the statute.

Under South Carolina Code § 7-11-50, if a party nominee is "disqualified" after his nomination, a political party may nominate a new candidate for the office. Because South Carolina law does not define the term "disqualified" for purposes of this statute, we rely on the statutory construction rules applied by South Carolina's highest court in the interpretation of statutes. *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009).

Under South Carolina law, "[W]ords in a statute must be construed in context. . . . [T]he meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute." *Hill v. York County Natural Gas Auth.*, 682 S.E.2d 809, 811-12 (S.C. 2009). "The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." *Id.* at 812.

Section 7-11-50 states, in relevant part:

> If a party nominee who was nominated by a method other than party primary election dies, becomes disqualified after his nomination, or resigns his candidacy for a legitimate nonpolitical reason as defined in this section and sufficient time does not remain to hold a convention to fill the vacancy or to nominate a nominee to enter a special election, the respective state or county party executive committee may nominate a nominee for the office, who must be duly certified by the respective county or state chairman.

S.C. Code § 7-11-50.

The plain language of Section 7-11-50 refutes the plaintiffs' argument. That statutory language addresses the circumstances in which a "party nominee" may be "disqualified" from representing a "party" after a "nomination." Because the Election Commission applied the sore-loser statute after Platt's loss in the Democratic primary, thereby preventing him from appearing on the general election ballot as the Green Party nominee, he was "disqualified" as a "party nominee" after his "nomination," within the meaning of Section 7-11-50.[3]

We disagree with the plaintiffs' contention that the holding in *Redfearn v. Board of State Canvassers*, 107 S.E.2d 10 (S.C. 1959), alters this analysis. In *Redfearn*, the Supreme Court of South Carolina held that voters who had taken an oath under South Carolina law to support the primary nominees in the general election were not disqualified from voting against those nominees in the general election. *Id.* at 11. This holding is not relevant to our analysis, because the holding does not refer to South Carolina Code § 7-11-50, nor does the holding address the issue of when a party nominee is "disqualified," as that term is used in Section 7-11-50.

Likewise, the timing of Platt's loss in the Democratic primary, after having secured the Green Party nomination, does not alter our conclusion that the sore-loser statute imposed a modest, rather than a severe, burden on the Green Party's association rights. The burden imposed by the sore-loser statute was the Green Party's loss of its ability to field its preferred candidate, an event unchanged by the date that this disqualification occurred. Thus, we conclude that the timing

---

[3]We also observe that the district court found that the Green Party could have nominated a substitute candidate. Although the Green Party contends that it was unable to name a replacement candidate, it has failed to demonstrate that the district court's finding was incorrect.

of Platt's loss is relevant only to the issue whether the state had an important regulatory interest in the enforcement of the sore-loser statute in this case. *See Timmons*, 520 U.S. at 358. Accordingly, we will address this circumstance of timing after, not as a part of, our determination of the level of scrutiny to be applied to the sore-loser statute.

Because Platt was "disqualified" from appearing on the ballot by operation of the sore-loser statute, the Green Party could have nominated a substitute candidate. *See* S.C. Code § 7-11-50. Additionally, because Platt's loss did not affect the Green Party's right to nominate its own candidate, but only affected the Green Party's right to nominate Platt as its preferred candidate, we conclude that the burden imposed by the sore-loser statute in this case is no greater than the modest burden imposed by the fusion ban at issue in *Timmons*. *See Timmons*, 520 U.S. at 359. Therefore, we hold that the impact of the sore-loser statute imposed only a modest burden on the Green Party's association rights, and we will not engage in strict scrutiny of those asserted rights.

### C.

Having determined that strict scrutiny is not warranted in the present case, we next examine South Carolina's regulatory interests advanced by the sore-loser statute. When, as here, a statute places only a modest burden on association rights, "a State's important regulatory interests will usually be enough to justify its reasonable, nondiscriminatory restrictions." *See Timmons*, 520 U.S. at 358 (internal quotation marks omitted).

We conclude that South Carolina's sore-loser statute advances several state regulatory interests that are important. As we previously have recognized, South Carolina's sore-loser statute advances the state's interest in minimizing excessive factionalism and party splintering. *See Cromer*, 917 F.2d at 825. The sore-loser statute also operates to reduce the possibility of voter confusion that could occur when a candidate's

name appears on the ballot after losing a primary race. *See Timmons*, 520 U.S. at 364 (recognizing Minnesota's state interest in avoiding voter confusion). Likewise, the sore-loser statute furthers the state's interest in ensuring orderly, fair, and efficient procedures for the election of public officials. *See id.*

Nevertheless, the plaintiffs attempt to distinguish our decision in *Cromer* based on the timing of Platt's defeat in the primary. The plaintiffs argue that Platt did not "splinter" the Democratic Party by seeking the Green Party's nomination after losing in the Democratic primary but sought the Green Party nomination at the outset of the primary process. We disagree with the plaintiffs' argument.

The state's regulatory interest in the enforcement of the sore-loser statute was not mitigated by Platt's nomination as the Green Party candidate before his loss in the Democratic primary. The timing of his primary loss did not relieve South Carolina's concern in limiting factionalism, because if Platt had remained on the ballot as the Green Party nominee after his loss in the Democratic primary, Democratic voters who supported Platt in the primary election could have voted for Platt in the general election. In this manner, by appearing on the general election ballot as the Green Party candidate, Platt could have splintered the Democratic Party voter base. Therefore, we conclude that South Carolina had important regulatory interests that justified the modest burden imposed by its nondiscriminatory application of the sore-loser statute, *see Burdick*, 504 U.S. at 434, and that the sore-loser statute did not impermissibly infringe on the Green Party's association rights, *see Timmons*, 520 U.S. at 358.

D.

Finally, we observe that South Carolina's status as a state permitting "fusion" candidates does not alter our analysis of the Green Party's association rights. The absence of a statu-

tory ban on fusion candidacies allows candidates to seek nominations from multiple parties. *See Timmons*, 520 U.S. at 363. However, the system of electoral fusion does not in any respect limit a political party's association rights to choose its nominee. Accordingly, we hold that South Carolina's sore-loser statute is constitutional as applied to Platt's Green Party candidacy, and that Platt properly was barred from having his name appear on the general election ballot as the Green Party's candidate based on the statute's application. *See id.* at 369-70.

### E.

The plaintiffs separately challenge the constitutionality of South Carolina's "party loyalty" statute, S.C. Code § 7-11-210, as applied to Platt's candidacy. However, we do not reach this issue because the constitutional application of the sore-loser statute, which barred Platt's candidacy as the Green Party's nominee, effectively prohibited Platt from appearing on the general election ballot as the nominee of any political party. Therefore, the issue of the constitutionality of the party loyalty statute as applied to Platt's Green Party candidacy is rendered moot by our holding on the sore-loser statute.[4]

### III.

For these reasons, we affirm the district court's holding that

---

[4]Because the plaintiffs failed to allege in their amended complaint that the Green Party's association rights were severely burdened by the party loyalty statute's restriction on Platt's campaigning, this issue was not before the district court and is not before us in this appeal. *See Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1411 n.* (4th Cir. 1994). The plaintiffs also failed to raise any facial challenge to the party loyalty statute in their district court pleadings and, therefore, we do not address these challenges that they have raised on appeal. *Id.*

South Carolina's sore-loser statute is constitutional as applied to Platt's Green Party candidacy.[5]

*AFFIRMED*

---

[5]We do not reach the plaintiffs' remaining argument concerning the constitutionality of South Carolina's "filing deadline" statute, S.C. Code § 7-11-15, as applied to Platt's Green Party candidacy. The parties have agreed that this challenge to the filing deadline statute is no longer relevant to this appeal.