735 S.E.2d 453

George TEMPEL, Appellant/Respondent,

v.

SOUTH CAROLINA STATE ELECTION COMMISSION (Marci Andino, as Executive Director, and Chris Whitmire, as Director of Public Information and Training); South Carolina Republican Party (Matt Moore, as Executive Director, and Chad Connolly, as Chairman); Charleston County Republican Party (Lin Bennett, as Chairman); Charleston County Board of Elections and Voter Registration (Joseph L. Debney, as Director, and Dan Martin, as Chairman); Dorchester County Republican Party (Carroll S. Duncan, Chairman); Dorchester County Board of Elections (Joshua Dickard, as Executive Director); and Paul Thurmond, Defendants,

of whom South Carolina Republican Party (Matt Moore, as Executive Director, and Chad Connolly, as Chairman); Charleston County Republican Party (Lin Bennett, as Chairman); Charleston County Board of Elections and Voter Registration (Joseph L. Debney, as Director, and Dan Martin, as Chairman); Dorchester County Republican Party (Carroll S. Duncan, Chairman) are Respondents,

and

South Carolina State Election Commission (Marci Andino, as Executive Director, and Chris Whitmire, as Director of Public Information and Training), and Paul Thurmond, are Respondents/Appellants.

Appellate Case No.2012–212729.

No. 27172.

Supreme Court of South Carolina.

Submitted Sept. 17, 2012.

Decided Sept. 20, 2012.

James Emerson Smith, Jr., of Columbia, for Appellant/Respondent.

Mary Elizabeth Crum, Ariail Burnside Kirk, and Amber B. Martella, all of McNair Law Firm, of Columbia, for Respondent/Appellant South Carolina State Election Commission; Michael A. Timbes and Matthew Evert Yelverton, both of Thurmond Kirchner Timbes & Yelverton, of Charleston, and Tanya Amber Gee, of Nexsen Pruet, of Columbia, for Respondent/Appellant Paul Thurmond; Samuel W. Howell, IV, of Howell Linkous & Nettles, of Charleston, for Respondent Charleston County Board of Elections and Voter Registration; and J. Robert Bolchoz, of Columbia and Karl Smith Bowers, Jr., and Matthew Todd Carroll, both of Womble Carlyle Sandridge & Rice, of Columbia, for Respondent South Carolina Republican Party.

Chief Justice TOAL.

Appellant/Respondent and Respondents/Appellants appeal an order of the circuit court concerning the candidacy of Respondent/Appellant Paul Thurmond for Senate District 41. The circuit court found Thurmond was not exempt from the filing requirement of section 8–13–1356(B) of the South Carolina Code. S.C.Code Ann. § 8–13–1356(B) (Supp.2011). Thus, Thurmond was disqualified as the Republican nominee for the District 41 seat. The judge, therefore, ordered the Republican Party to conduct a special primary election pursuant to

section 7–11–55. S.C.Code Ann. § 7–11–55 (Supp.2011). We affirm the order of the circuit court.

## FACTS

On March 29, 2012, Thurmond electronically filed a Statement of Economic Interests (SEI). Thirty minutes later, he filed his Statement of Intention of Candidacy (SIC) for the Republican Party primary for Senate District 41. However, he did not file a paper copy of his SEI along with his SIC as required by section 8–13–1356(B), and interpreted by this Court in *Anderson v. South Carolina Election Commission*, 397 S.C. 551, 725 S.E.2d 704 (2012), and *Florence County Democratic Party v. Florence County Republican Party*, 398 S.C. 124, 727 S.E.2d 418 (2012). All of the other Republican contenders for the Senate District 41 seat were decertified for failing to comply with section 8–13–1356(B). However, Thurmond's name remained on the ballot, and he received over 1,700 votes. He was subsequently declared the Republican candidate for the seat.

Thurmond is a part-time prosecutor for the City of North Charleston. Thurmond admits he did not file his SEI simultaneously with his SIC for Senate Seat 41; he has never filed an SEI as a municipal prosecutor; and the SEI, which he filed electronically on March 28, 2012, was not filed in connection with his position as a municipal prosecutor.

## I. EXEMPTION

Section 8–13–1356(B) requires a non-exempt candidate to file an SEI for the preceding calendar year at the same time and with the same official with whom the candidate files an SIC. *Anderson v. S.C. Election Comm'n*, 397 S.C. 551, 558, 725 S.E.2d 704, 707–08 (2012). This requirement does not apply to "a public official who has a current disclosure statement on file with the appropriate supervisory office pursuant to Sections 8–13–1110 or 8–13–1140." S.C.Code Ann. § 8–13–1356(A) (Supp.2011). Public officials are required, under section 8–13–1110(B), to file an SEI with the appropriate supervisory office prior to taking office. Section 8–13–1140 requires annual updates to SEIs no later than April 15th. S.C.Code Ann. § 8–13–1140 (Supp.2011). The primary rule of statutory

construction is to ascertain and give effect to the intent of the legislature. *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). The statutory language must be construed in light of the intended purpose of the statute. *Id.* This Court will not construe a statute in a way which leads to an absurd result or renders it meaningless. *See Lancaster Cnty. Bar Ass'n v. S.C. Comm'n on Indigent Defense*, 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008) ("In construing a statute, this Court will reject an interpretation which leads to an absurd result that could not have been intended by the legislature.").

■ Assuming, without deciding, that a part-time municipal prosecutor is a public official who is required to file an SEI, we hold Thurmond was not exempt from the simultaneous filing requirement of section 8–13–1356(B). The logical construction of section 8–13–1356(A) requires the SEI on file to be the one filed by the public official for the office currently held by that official. Construing section 8–131356(A) as Thurmond requests would reward an official for not complying with the requirement of section 8–13–1110 of filing an SEI prior to taking office while also allowing the official to circumvent the simultaneous filing requirement of section 8–13–1356(B). This construction does not serve the legislative intent behind these statutes.

Thurmond admits his SEI was not filed in relation to his position as a municipal prosecutor. Therefore, his SEI was not a current SEI of a public official on file under section 8–13–1110, and he is not exempt under section 8–13–1356(A) from the requirement of filing his SEI along with his SIC.

## II. SPECIAL PRIMARY

■ Appellant/Respondent George Tempel and Respondent/Appellant the South Carolina State Election Commission (the State Commission) contend the circuit court erred in ordering a special primary election under section 7–11–55 of the South Carolina Code. We disagree.

Section 7–11–55 provides, "If a party nominee dies, becomes disqualified after his nomination, or resigns his candidacy for a legitimate nonpolitical reason ... and was selected through a party primary election, the vacancy must be filled in a special

primary election." S.C.Code Ann. § 7–11–55 (Supp.2011). Tempel and the State Commission argue the circuit court erroneously ordered a special primary election because Thurmond was not "disqualified." Tempel further contends section 7–11–55 is inapplicable because Thurmond was not selected by party primary. In addition, the State Commission argues Thurmond was not the "party nominee" because he was improperly certified.

### a. Selection through Party Primary

Pursuant to section 7–11–10, nominations for candidates may be made by political party primary, political party convention, or by petition. S.C.Code Ann. § 7–11–10 (Supp.2011). Although Thurmond may have been declared the Republican candidate under sections 7–11–90 and 7–17–620 because he was unopposed in the primary election, this does not alter the fact that the Republican Party used a primary election as the method for selecting its candidate for the Senate District 41 seat. *See* S.C.Code Ann. §§ 7–11–90 and 7–17–620 (1976). Accordingly, Thurmond was selected through a party primary election.

### b. Party Nominee

Thurmond was certified as the party nominee for Senate Seat 41. The fact that the Republican Party in good faith, albeit erroneously, believed Thurmond was exempt from the filing requirement of section 8–13–1356(B) does not negate his status as the party nominee. We, therefore, reject the State Commission's argument that section 7–11–55 is inapplicable because Thurmond was not the party nominee.

### c. Disqualified After Nomination

The central issue in the instant case is the interpretation of the term "disqualified" as used in section 7–11–55. In *South Carolina Green Party v. South Carolina State Election Commission*, 612 F.3d 752 (4th Cir.2010), the plaintiff sought declaratory and injunctive relief against South Carolina's application of various election law statutes. In that case, the Fourth Circuit Court of Appeals noted that the term "disqualified" was not defined in the statute. However, the court relied on the statutory construction rules of this Court in

interpreting the statute. *Id.* at 757–58 ("Because South Carolina law does not define the term 'disqualified' for purposes of this statute, we rely on the statutory construction rules applied by South Carolina's highest court in the interpretation of statutes." (citing *In re DNA Ex Post Facto Issues,* 561 F.3d 294, 300 (4th Cir.2009))).

Because this Court held that words in a statute must be construed in context, and the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute, the Fourth Circuit concluded the plain language of the provision "addresse[d] the circumstances in which a 'party nominee' could be 'disqualified' from representing a 'party' after a 'nomination.'" *Id.* at 758 (citing *Hill v. York Cnty. Natural Gas Auth.,* 384 S.C. 483, 682 S.E.2d 809, 811–12 (2009) ("The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose.")). Accordingly, the court held the State Election Commission's application of the "sore loser" statute [1] after the plaintiff's loss in the Democratic primary prevented him from appearing on the general election ballot as the Green Party nominee and rendered the plaintiff "disqualified" as a "party nominee" after his "nomination." *Id.* The Fourth Circuit's interpretation of "disqualified" as that term is used in section 7–11–50, is correct, and applies equally as that term is used in section 7–11–55.

The Fourth Circuit's deferential and persuasive opinion highlights the preeminent matter of concern before this Court. In *Green Party,* the Fourth Circuit addressed whether South Carolina's election statutes operated to foreclose a political party's right to associate and choose a preferred or substitute candidate, thereby frustrating the party's political participation. *See Green Party,* 612 F.3d at 756–58. The dissent's attempt to improperly extend this Court's decision in *Anderson* threatens to do just that. In our judgment, the dissent errs in conflating section 8–13–1356, the candidacy filing statute, with section 7–11–55, the party nominee replacement statute. This conflation produces the absurd result that

---

1. S.C.Code Ann. § 7–11–10 (Supp.2011) (no person who was defeated as a candidate for nomination in a party primary shall have his name on the general election ballot).

a political party can never conduct a replacement primary in a circumstance where, as here, its candidate is disqualified after certification for a defective filing.

In *Anderson,* this Court correctly concluded that section 8–13–1356(B) of the South Carolina Code requires a candidate for office must file an SEI at the same time and with the same official with whom the candidate files an SIC. *Anderson,* 397 S.C. at 558, 725 S.E.2d at 708. (holding the unambiguous language of section 8–13–1356 prohibits a political party from accepting an SIC which is not accompanied by an SEI). Thus, the Court held that the names of any non-exempt individuals who did not file the appropriate documents were improperly placed on the ballot, and ordered their removal from the ballot. *Id.* However, the interpretation of section 8–13–1356(B) and the responsibility of putative candidates and political parties to act in conformity therewith are the sole issues decided in *Anderson.* The broader issue in this case is what South Carolina's election law regime provides to political parties, candidates, and citizens upon the disqualification or resignation of a party nominee. These issues were not addressed in *Anderson,* and thus, our opinion in that case is not controlling.

Section 7–11–55 provides that when a party nominee, selected through a primary party election, dies, resigns, or is disqualified, the vacancy must be filled through a special primary. S.C.Code Ann. § 7–11–55 (Supp.2011). This Court's primary role in construing the section must be to ascertain and give effect to the intent of the legislature, so long as this does not lead to an absurd result. It is clear from the face of the statute that the General Assembly intended to provide a mechanism for political parties to replace nominees prior to the general election. It is equally clear that the General Assembly would not have intended for "disqualified" to be interpreted so narrowly that a political party is prevented from conducting *any* special primary to replace its nominee due to the improper certification of a nominee. The dissent's view of disqualification, based on our opinion in *Anderson,* would not only remove Thurmond from the ballot, but would prevent the Republican Party from holding *any* primary. We simply cannot infer that the General Assembly intended for the section which speaks directly to the issue of "disqualifica-

tion," to include the arbitrary distinctions that the dissent suggests. Furthermore, the dissent's view would prevent Thurmond from entering the special primary, and participating as a petition candidate, two results clearly not contemplated by section 7–11–55.

▮ Thus, we reject the argument that Thurmond's candidacy was void *ab initio* because he was never eligible to be a candidate. Instead, we hold Thurmond was disqualified from the initial primary election, held on June 12, 2012, for Senate Seat 41 because he failed to comply with the simultaneous filing requirement of section 8–13–1356(B).

## CONCLUSION

Thurmond was not exempt under section 8–13–1356(A) from the simultaneous filing requirement of section 8–13–1356(B) and, therefore, was disqualified after his nomination from the initial Republican Party primary election for Senate District 41 because of his failure to comply with the filing requirement. Accordingly, the circuit court properly ordered a special primary election to be held pursuant to section 7–11–55.

**AFFIRMED.**

KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion in which BEATTY, J., concurs.

Justice PLEICONES.

I agree with the majority that Thurmond was not exempt from the simultaneous filing requirement of S.C.Code Ann. § 8–13–1356(B) (Supp.2011). I do not agree, however, that he was a party nominee who became disqualified after his nomination such that a special primary election was proper under S.C.Code Ann. § 7–11–55 (Supp.2011). I would therefore reverse the circuit court's order requiring a special primary election under that statute.

### 1.  Party Nominee

The name of any individual who did not meet the simultaneous filing requirement of § 8–13–1356(B) "must be re-

moved" from the party primary ballot. *Anderson v. S.C. Election Comm'n*, 397 S.C. 551, 725 S.E.2d 704 (2012). An individual whose name appears on the ballot in violation of this statutory requirement may not be certified as a candidate for the general election. *Anderson*, citing S.C.Code Ann. § 8–13–1356(E) (Supp.2011). In *Florence Cnty. Democratic Party v. Florence Cnty. Republican Party*, 398 S.C. 124, 727 S.E.2d 418 (2012), this Court held that *Anderson* applied to all political party primaries throughout the state, and that "[t]o the extent other political parties have improperly certified candidates, those parties ignore the decision of this Court at their own peril." Here, despite our clear holding in *Anderson*, reinforced by our decision in *Florence County*, the Charleston County Republican Party chose not to remove Thurmond from the ballot, and then chose to certify him in the face of our explicit warning in *Florence County*. The name of any individual who did not comply with § 8–13–1356(B) was to be removed from the primary ballot under *Anderson*. A party cannot remedy its error in allowing such an individual's name to appear by unlawfully certifying his election. *Florence County, supra*. Thurmond is not his party's nominee as he did not properly file as a candidate. Section 7–11–55 does not apply to this situation.

## 2. Disqualification

Even if Thurmond were somehow found to be a party nominee, he has not been disqualified within the meaning of § 7–11–55. While the term "disqualified" is not defined in § 7–11–55, the State Constitution sets forth the qualifications for a seat in the Senate. Pursuant to S.C. Const. art. III, § 7, a person must be a duly qualified elector in the district, twenty-five years old, and a legal resident of the district at the time of filing for office in order to be eligible for a Senate seat. That section also prohibits anyone convicted of certain enumerated crimes from serving in the Senate unless the person has been pardoned or fifteen years has passed since the completion of the sentence for the crime. In *Anderson*, this Court specifically stated that " § 8–13–1356 does not alter the **qualification** for one to serve as a legislator. Instead, it merely delineates filing requirements to appear on a ballot." *Anderson, supra* (emphasis added). Accordingly, I disagree

with the majority when it holds that "Thurmond was disqualified from the initial primary election ... because he failed to comply with the simultaneous filing requirement of § 8–13–1356(B)." In my opinion, such a holding would require the Court overrule this part of *Anderson*. A candidate who did not meet the filing requirements of § 8–13–1356 is not "disqualified" within the meaning of § 7–11–55.

As used in election law, whether an individual is qualified for office asks whether she meets the constitutional or statutory requirements for the office. *See Ravenel v. Dekle*, 265 S.C. 364, 218 S.E.2d 521 (1975) (Ravenel not qualified to serve as Governor because he did not meet constitutional residency requirement for office). Moreover, a statute cannot alter the "qualifications" for office when the Constitution has established them unless the Constitution itself authorizes such alteration. *Joint Legislative Committee for Judicial Screening v. Huff*, 320 S.C. 241, 464 S.E.2d 324 (1995). Here, there is no contention that Thurmond has become "disqualified" from holding the office of Senator after his "nomination," either because he was no longer a qualified elector, because he was less than twenty-five years old, because he had moved out of the district, or because he had committed one of the offenses listed in S.C. Const. art. III, § 7. Had Thurmond become disqualified for one of these reasons after his nomination, he most certainly would not simultaneously have been requalified to run in a special election under § 7–11–55.

The majority finds the Fourth Circuit Court of Appeals' interpretation of the term "disqualified" in § 7–11–50 persuasive. *See S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752 (4th Cir.2010). In *Green Party*, the court found that § 7–11–50 addresses the circumstances in which a party nominee may be disqualified from representing a party after a nomination. While § 7–11–50 resembles § 7–11–55[2], the statute at issue here, I disagree with the Fourth Circuit's interpretation. Section 7–11–50's first paragraph provides:

If a party nominee who was nominated by a method other than party primary election dies, becomes disqualified after his nomination, or resigns his candidacy for a legitimate

---

**2.** Section 7–11–50 deals with the substitution of a candidate nominated by a method other than a party primary.

nonpolitical reason as defined in this section and sufficient time does not remain to hold a convention to fill the vacancy or to nominate a nominee to enter a special election, the respective state or county party executive committee may nominate a nominee for the office, who must be duly certified by the respective county or state chairman.

The statute next defines the "legitimate nonpolitical reason" for a candidate's resignation under the statute, before providing the substitution procedures. While the statute does define the circumstances in which a candidate who resigns can be substituted (i.e. where the resignation is for "legitimate nonpolitical reasons"), it nowhere purports to define when a party nominee becomes disqualified.

In my opinion, the Fourth Circuit incorrectly interpreted § 7–11–50 in *S.C. Green Party v. S.C. State Election Comm'n, supra. See Laffitte v. Bridgestone Corp.,* 381 S.C. 460, 674 S.E.2d 154 (2009) (a federal court decision interpreting state law is not binding on this Court). There is no language in § 7–11–50 which "addresses the circumstances" in which a party nominee could be disqualified, nor is there any such language in § 7–11–55.

Section 7–11–55 begins:

If a party nominee dies, becomes disqualified after his nomination, or resigns his candidacy for a legitimate nonpolitical reason as defined in Section 7–11–50 and was selected through a party primary election, the vacancy must be filled in a special primary election to be conducted as provided in this section.

The remainder of the statute is concerned with the procedures for conducting the special primary, and reiterates that a candidate resigning his candidacy must follow the procedures outlined in § 7–11–50. Section 7–11–55 does no more to "address the circumstances" in which a party nominee may be disqualified than does § 7–11–50.

Finally, the term "becomes disqualified **after his nomination**" should be construed in its plain and ordinary meaning. *Anderson, supra* (unless something in the statute requires a different interpretation, the words used in a statute must be given their ordinary meaning). Even if we were to hold that failure to comply with § 8–13–1356(B) constituted a disqualifi-

cation under § 7–11–55, it did not occur "after [Thurmond's] nomination." Instead, it existed at the time he filed as a candidate. Accordingly, it is my opinion that Thurmond's failure to comply with the requirement to appear on the ballot does not constitute a disqualification "after his nomination" which would authorize a special primary election under § 7–11–55.

## Conclusion

Because Thurmond was not exempt from the SEI filing requirement of § 8–13–1356(B), he was ineligible to appear on the ballot and was improperly certified as the Republican nominee for Senate District 41. He, therefore, is not the party nominee. Further, Thurmond was not "disqualified after his nomination" by his failure to simultaneously file an SEI and an SIC. Accordingly, the circuit court erred in ordering a special primary election to be held pursuant to § 7–11–55. I therefore dissent and would reverse the order of the circuit court authorizing the Republican Party to hold a special primary election and declare the results of the special election, held on September 18, 2012, null and void.

BEATTY, J., concurs.