*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, ) | |
| ) | Supreme Court No. S-16875 |
| Appellant, ) | |
| ) | Superior Court No. 1JU-17-00563 CI |
| v. ) | |
| ) | O P I N I O N |
| ALASKA DEMOCRATIC PARTY, ) | |
| ) | No. 7279 – August 24, 2018 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellant. Jon Choate, Choate Law Firm LLC, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

The Alaska Democratic Party amended its bylaws to allow registered independent voters to run as candidates in its primary elections without having to become Democratic Party members, seeking to expand its field of candidates and thereby nominate general election candidates more acceptable to Alaska voters. But the Division

of Elections refused to allow independent voter candidates on the Democratic Party primary election ballot, taking the position that Alaska election law — specifically the "party affiliation rule" — prevented anyone not registered as a Democrat from being a candidate in the Democratic Party's primary elections. The Democratic Party sued for declaratory and injunctive relief preventing enforcement of the party affiliation rule, and the superior court ruled in its favor. The State appealed. Because the Alaska Constitution's free association guarantee protects a political party's choice to open its primary elections to independent voter candidates, and because in this specific context the State has no countervailing need to enforce the party affiliation rule, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Alaska's Election System

Alaska uses a mandatory primary election or petition process to decide who may appear as a candidate for statewide office on the general election ballot.[1] A candidate affiliated with a recognized state political party[2] may appear on the general election ballot by winning a primary election against other party candidates.[3] A

---

[1] *See generally* AS 15.25.

[2] *See* AS 15.80.008 (defining recognized political party); AS 15.80.010 (defining political party); AS 15.07.050 (providing for voter registration affiliating with political party). Alaska also recognizes two types of unaffiliated voters: "nonpartisan" and "undeclared." AS 15.07.075. A nonpartisan voter affirmatively registers as nonpartisan. *Id.* An undeclared voter registers as undeclared, fails to declare an affiliation, or declares affiliation with an unrecognized political group or party. *Id.* We refer to both types of voters as "independents" or "independent voters."

[3] *See* AS 15.25.010 (providing for party primary election); AS 15.25.100 (providing that winner of party primary election has name placed on general election ballot).

candidate not representing a political party may appear on the general election ballot by submitting a petition with a sufficient number of qualified voters' signatures.[4] Aside from provisions for replacing candidates who withdraw,[5] the only other way a candidate may be on the general election ballot is by filing as a write-in candidate.[6]

Political party status is measured by each party's support statewide. "[A]n organized group of voters that represents a political program" qualifies as a political party if it nominated a candidate for governor who received at least three percent of the total votes cast for governor in the preceding general election or if it has registered voters in the state equal to at least three percent of the votes cast for governor in that election.[7] Party status has several benefits: political parties may make and receive larger political contributions, nominate members of election boards, appoint poll watchers, obtain seats

---

[4] *See* AS 15.25.140 (providing for petition); AS 15.25.190 (providing successful petitioner has name placed on general election ballot); *see also* AS 15.25.160 (setting signature requirement for statewide office at one percent of number of voters in state in preceding general election); AS 15.25.170 (setting signature requirement for district-wide office at one percent of number of voters in district in preceding general election).

[5] *See* AS 15.25.110 ("If a candidate of a political party nominated at the primary election dies, withdraws, resigns, becomes disqualified . . . , or is certified as being incapacitated . . . , the vacancy may be filled by party petition.").

[6] *See* AS 15.25.105(a) ("If a candidate does not appear on the primary election ballot or is not successful in advancing to the general election and wishes to be a candidate in the general election, the candidate may file as a write-in candidate.").

[7] AS 15.80.010(27)(A). If the governorship was not on the ballot, the rule applies using the office of United States senator. AS 15.80.010(27)(B). If neither position was on the ballot, the rule applies using the office of United States representative. AS 15.80.010(27)(C).

on the Alaska Public Offices Commission, and, most importantly, gain automatic access to the general election ballot for its candidates through primary elections.[8]

Under Alaska Statutes any political party member may run in a party primary by filing a declaration of candidacy, statement of income sources and business interests, and filing fee.[9] The declaration of candidacy includes a statement under oath that the person meets Alaska's candidate eligibility requirements,[10] and eligibility is subject to verification by the director of elections.[11] The candidate eligibility requirements include restrictions on residency, citizenship, voter qualification, age, multiple candidacies, cross-filing, and party affiliation.[12] Under this last requirement — the party affiliation rule — primary election candidates must be "registered to vote as a member of the political party whose nomination is being sought."[13] A political party may not waive the party affiliation rule, but it may opt to have a single primary election ballot or a combined primary election ballot with one or more other parties.[14] Political

---

[8] *See* AS 15.13.070 (contributions); AS 15.10.120 (election boards); AS 15.10.170 (poll watchers); AS 15.13.020(b) (Alaska Public Offices Commission); AS 15.25.100 (general election ballot access); *see also State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 981-82 (Alaska 2005) (explaining benefits recognized political parties receive).

[9] *See* AS 15.25.030(a) (declaration of candidacy); AS 15.25.030(b) (statement of income sources and business interests); AS 15.25.050 (filing fee).

[10] *See* AS 15.25.030(a).

[11] *See* AS 15.25.042.

[12] *See* AS 15.25.030(a)(6), (9), (10), (11), (14), (16).

[13] *See* AS 15.25.030(a)(16).

[14] *See State v. Green Party of Alaska* (*Green Party I*), 118 P.3d 1054, 1070

(continued...)

parties also may choose whether to allow independent voters or other parties' voters to participate in their primary elections.[15] By default, primary election ballots are designed to allow independent voters to participate in a political party's primary election but to exclude other political parties' voters from participating in that primary election.[16]

Alaskans may change their voting registration status at any time.[17]

## B.     The Democratic Party's Challenge

The Democratic Party is a recognized Alaska political party with over 75,000 members. The Democratic Party historically allowed only Democratic Party members to run as primary election candidates, but it recently became interested in allowing independents to run as candidates in its primary election. The Democratic Party first sought judicial approval for this course of action in 2016, but the superior court dismissed that case as unripe because the Democratic Party's bylaws did not then allow independent candidacies.

The Democratic Party later amended its bylaws to allow independent voters to participate as candidates in its primary elections. The Democratic Party petitioned the Division of Elections to allow these candidacies, but the Division denied the request because it conflicted with the party affiliation rule. The Democratic Party then brought the current lawsuit, once more challenging the party affiliation rule's constitutionality.

---

[14]     (...continued) (Alaska 2005). The Democratic Party opted to have a combined ballot with other parties after our ruling in *Green Party I*.

[15]     *See* AS 15.25.014(b).

[16]     *See* AS 15.25.010.

[17]     *See* AS 15.07.040 ("A person who is qualified . . . is entitled to register at any time . . . .").

The parties filed cross-motions for summary judgment, and the superior court granted the Democratic Party's and denied the State's. The court concluded that the Democratic Party had an associational right under the Alaska Constitution to allow independent candidates to run in its primary election and that the party affiliation rule severely burdened this right by infringing on the Democratic Party's internal decision-making. The court also concluded that the State's interest in requiring candidates and political parties to have demonstrable public support was not advanced by the party affiliation rule, that the fit between the State's interest in preventing voter confusion and the party affiliation rule was not close enough to justify the burden on the Democratic Party's associational right, and that the State had not demonstrated how its interest in political stability was advanced by the party affiliation rule.

The State appealed. We expedited consideration of the appeal and issued a brief order affirming the superior court's judgment.[18] We now explain our decision.[19]

---

[18] *State v. Alaska Democratic Party*, No. S-16875 (Alaska Supreme Court Order, Apr. 4, 2018).

[19] "This court reviews a grant of summary judgment de novo and will affirm if, when the facts are viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Green Party I*, 118 P.3d at 1059 (citing *Sonneman v. State*, 969 P.2d 632, 635 (Alaska 1998)). "Constitutional claims . . . are questions of law and are reviewed de novo. In conducting de novo review, we will 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' " *Id.* (footnote omitted) (first citing *Sonneman*, 969 P.2d at 635; then quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

## III. DISCUSSION

The Alaska Constitution grants every person the right to "freely speak, write, and publish on all subjects, being responsible for the abuse of that right."[20] This inherently guarantees the rights of people, *and political parties*, to associate together to achieve their political goals.[21] When those associational rights conflict with another law, like the Alaska election code, it is our duty to decide whether the Constitution has been violated.[22]

Our constitutional inquiry is governed by *State v. Green Party of Alaska* (*Green Party I*):

> When an election law is challenged the court must first determine whether the claimant has in fact asserted a constitutionally protected right. If so we must then assess "the character and magnitude of the asserted injury to the rights." Next we weigh "the precise interests put forward by the State as justifications for the burden imposed by its rule." Finally, we judge the fit between the challenged legislation and the [S]tate's interests in order to determine "the extent to which those interests make it necessary to burden the plaintiff's rights." This is a flexible test: as the burden on constitutionally protected rights becomes more severe, the government interest must be more compelling and the fit

---

[20] Alaska Const. art. I, § 5.

[21] *See Green Party I*, 118 P.3d at 1064-65; *Vogler v. Miller* (*Vogler I*), 651 P.2d 1, 3 (Alaska 1982).

[22] "[O]ur duty to uphold the Alaska Constitution is paramount; it takes precedence over the politics of the day and our own personal preferences." *Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1133 (Alaska 2016) (citing Alaska Const. art. XII, § 5 (requiring public officers to swear to "support and defend . . . the Constitution of the State of Alaska")); *Malone v. Meekins*, 650 P.2d 351, 356 (Alaska 1982) ("[T]he judicial branch . . . has the constitutionally mandated duty to ensure compliance with the provisions of the Alaska Constitution . . . .").

between the challenged legislation and the [S]tate's interest must be closer.[23]

Under this framework we conclude that the Democratic Party has an associational right to choose its general election nominees, that this right is substantially burdened by the party affiliation rule, and that the State's asserted interests do not have a sufficiently close fit to justify the burden. For these reasons — and based on the unique facts of this case, specifically the Democratic Party's bylaws allowing independent voters, *in addition to Democratic Party voters*, to be candidates in primary elections — we affirm the superior court's decision to enjoin the party affiliation rule as unconstitutional.

**A.    The Democratic Party Has An Associational Right To Choose General Election Nominees That Can Include Allowing Independent Voters To Run As Candidates In Its Primary Elections.**

The first step in our analysis is to decide whether the Party "has in fact asserted a constitutionally protected right."[24] We conclude that the Party has asserted a constitutionally protected right — the right to choose its general election nominees.

We begin our analysis with the uncontroversial premise that political parties have a constitutional right to choose their general election nominees. This right is reflected throughout United States Supreme Court decisions interpreting the First Amendment, which we consider in our interpretation of the Alaska Constitution; the Court has struck down laws requiring binding open presidential preference primaries,[25]

---

[23]    *Green Party I*, 118 P.3d at 1061 (footnotes omitted) (quoting *O'Callaghan v. State*, 914 P.2d 1250, 1254 (Alaska 1996)).

[24]    *See id.*

[25]    *See Democratic Party of U.S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 126 (1981).

laws requiring closed primaries,[26] laws preventing a party from endorsing primary candidates,[27] and laws requiring a blanket primary.[28] Even in cases that sustained challenged laws, the existence of this right has not been questioned.[29] There can be no doubt that, at least broadly speaking, the Democratic Party has the right to choose its general election nominees.

The more difficult question is whether this general right to choose election nominees can include allowing independents to be candidates in the Democratic Party's primary elections. We conclude that it can.

The United States Supreme Court suggested that such a right existed in *Tashjian v. Republican Party of Connecticut*, when it observed:

> Were the State to restrict by statute financial support of the Party's candidates to Party members, *or to provide that only Party members might be selected as the Party's chosen nominees for public office*, such a prohibition of potential association with nonmembers would *clearly infringe* upon the rights of the Party's members under the First Amendment to

---

[26]    *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 225 (1986).

[27]    *See Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 229 (1989).

[28]    *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 586 (2000).

[29]    *See, e.g.*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) ("[T]he New Party, and not someone else, has the right to select the New Party's 'standard bearer.' "); *Storer v. Brown*, 415 U.S. 724, 736-37 (1974) (upholding disaffiliation law because of important state interests, not failure to assert a right); *S.D. Libertarian Party v. Gant*, 60 F. Supp. 3d 1043, 1050 (D.S.D. 2014) (holding affiliation requirement "only minimally burdens [the political party's] *associational rights*" (emphasis added)).

organize with like-minded citizens in support of common political goals.[30]

Though dicta, this language plainly contemplated that the First Amendment might protect the Democratic Party's asserted right to associate with independent candidates.

Our previous case law likewise suggests this result. In *Green Party I* the Green Party of Alaska and the Republican Moderate Party challenged a statute requiring "each political party to have its own primary ballot on which only candidates of that political party appear."[31] The two parties sought to present their respective candidates on a combined ballot and asserted the statute unconstitutionally burdened their associational rights.[32] We agreed, concluding that "political parties have a constitutionally protected associational interest in opening their ballots to voters who would otherwise vote in the primaries of their own political parties."[33] In reaching this conclusion, we favorably noted that in *Tashjian* "the political party itself wished to invite independent voters to participate in its primary election" and thus "there was 'no conflict between associational interests of members and nonmembers.' "[34] We also interpreted *California Democratic Party v. Jones* as "reaffirm[ing] the reasoning behind *Tashjian*," and we highlighted *Jones*'s language emphasizing the importance of selecting a

---

[30]  *Tashjian*, 479 U.S. at 215 (emphases added).

[31]  *Green Party I*, 118 P.3d 1054, 1057 (Alaska 2005).

[32]  *Id*.

[33]  *Id.* at 1061.

[34]  *Id.* at 1063 (quoting *Tashjian*, 479 U.S. at 215 n.6). In *Tashjian* the Connecticut Republican Party sought to allow independent voters to participate as voters in its primary election (an "open" primary). 479 U.S. at 212-13. The Court held that a state statute prohibiting open primaries unconstitutionally burdened the Connecticut Republican Party's associational rights. *Id.* at 225.

nominee.[35] In *Green Party I* we explicitly rejected the State's argument that *Tashjian* did not support the existence of a right because it limited its holding to independent voters; we instead embraced the "overarching principle[s]" of *Jones* and *Tashjian*, recognizing "[t]he right to determine who may participate in selecting [a party's] candidates — and, if the political party so desires, to seek the input and participation of a broad spectrum of voters — is of central importance to the right of political association."[36] We noted that "where a party invites a voter to participate in its primary and the voter seeks to do so, we should begin with the premise that there are significant associational interests at stake."[37]

By analogy to *Green Party I*, the Democratic Party's associational right to choose its general election nominees does not depend on party registration: "[W]here a party invites a [candidate] to participate in its primary and the [candidate] seeks to do so, we should begin with the premise that there are significant associational interests at stake."[38] We therefore conclude that the Democratic Party has an associational right to choose its general election nominees and that the right can include allowing independents to run in its primary elections.

---

[35] *Green Party I*, 118 P.3d at 1064. In *Jones* the California Democratic Party sought to prevent voters of other political parties from participating in its primary election (a "closed" primary). 530 U.S. 567, 571 (2000). The Supreme Court held that a state statute mandating a blanket primary in which voters of one political party could vote in another political party's primary election unconstitutionally burdened the California Democratic Party's associational rights. *Id.* at 586.

[36] *Green Party I*, 118 P.3d at 1064.

[37] *Id.* at 1064 n.72 (quoting *Clingman v. Beaver*, 544 U.S. 581, 602 (2005) (O'Connor, J., concurring)).

[38] *See id.* (quoting *Clingman*, 544 U.S. at 602 (O'Connor, J., concurring)).

**B.      The Burden On The Democratic Party's Rights Is Substantial.**

The next step in our analysis is evaluating the "character and magnitude of the asserted injury to the" Democratic Party's associational right to choose its general election nominees.[39] The extent of the burden determines how closely we will scrutinize the State's justifications for the law: substantial burdens require compelling interests narrowly tailored to minimally infringe on the right; modest or minimal burdens require only that the law is reasonable, non-discriminatory, and advances "important regulatory interests."[40]

We conclude that the party affiliation rule substantially burdens the Democratic Party's right to choose its general election nominees. We recognize there are federal cases holding that candidate eligibility restrictions like the party affiliation rule present only a modest burden.[41] Perhaps most relevant to this case, in *Clingman v. Beaver* a plurality of the United States Supreme Court reasoned that a party registration requirement does not severely burden parties' associational rights because "[t]o attract

---

[39]      *Id.* at 1061 (quoting *O'Callaghan v. State*, 914 P.2d 1250, 1254 (Alaska 1996)).

[40]      *See O'Callaghan*, 914 P.2d at 1254; *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

[41]      *See, e.g.*, *Clingman*, 544 U.S. at 590-91 (plurality opinion) (prohibiting other parties' voters from voting in Libertarian primary not severe burden); *id.* at 604 (O'Connor, J., concurring) (prohibiting other parties' voters from voting in Libertarian primary is modest burden); *Timmons*, 520 U.S. at 363-64 (holding anti-fusion law — preventing parties from nominating candidate already nominated by another party — not severe burden); *Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 932 (6th Cir. 2013) (affirming lower court's conclusion that sore loser statute — preventing parties from nominating candidate who ran and lost in another primary election — not severe burden); *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 757 (4th Cir. 2010) (holding sore loser statute not severe burden); *S.D. Libertarian Party v. Gant*, 60 F. Supp. 3d 1043, 1050 (D.S.D. 2014) (holding party affiliation rule not severe burden).

members of other parties, the [party] need only persuade voters to make the minimal effort necessary to switch parties."[42] The State urges this same reasoning to us, arguing the Democratic Party "can nominate via its party primary any candidate that it can convince to run as a *party* candidate — i.e., to register with the party." (Emphasis in original.)

But the constitutional burden cannot be resolved by following these cases because the Alaska Constitution is more protective of political parties' associational interests than is the federal constitution.[43] In *Green Party I* we specifically rejected the *Clingman* reasoning that the ability to register with a party lessened the burden on associational rights, instead concluding that requiring voters to "fully affiliate themselves with a single political party or to forgo completely the opportunity to participate in that party's primary . . . place[d] a substantial restriction on the political party's associational rights."[44] As we explained: "The choice that the [S]tate forces a voter to make means that a political party cannot appeal to voters who are unwilling to limit their primary choices to the relatively narrow ideological agenda advanced by any single political party."[45] This choice changed "not just . . . which candidates the political party ultimately nominates, but also . . . the ideological cast of the nominated candidates."[46] This change in ideological cast is exactly what the Democratic Party now seeks by

---

[42]    544 U.S. at 591 (plurality opinion); *see also id.* at 604 (O'Connor, J., concurring) ("The semiclosed primary law, standing alone, does not impose a significant obstacle to participation in the [party]'s primary . . . .").

[43]    *See Vogler I*, 651 P.2d 1, 3 (Alaska 1982).

[44]    118 P.3d at 1065.

[45]    *Id.*

[46]    *Id.*

opening its primary to independent candidates. To the extent the combined-ballot ban in *Green Party I* substantially burdened the political parties' asserted rights in that case, so too does the party affiliation rule burden the Democratic Party's asserted rights in this case.[47] To conclude otherwise would be to reject the very interest that the Democratic Party seeks to recognize; the Democratic Party does not just want primary election candidates who happen to be independent voters, it wants candidates *because* they are independent voters. Even if federal law does not recognize this burden as substantial, it does not change the magnitude of the burden under the Alaska Constitution.[48]

## C.  The State Has Failed To Demonstrate A Compelling Interest Justifying The Burden On The Democratic Party.

Because the party affiliation rule substantially burdens the Democratic Party's associational rights, the State must justify the burden with sufficiently important state interests.[49] When weighing whether sufficiently important interests justify a burden

---

[47]  *See id.*

[48]  We note further that none of the State's proffered cases presented the factual scenario we address here — a political party intentionally amending its bylaws to allow independent voters to run as candidates. In *Clingman* the party sought to affiliate with voters of different parties. 544 U.S. 581, 585 (2005). In *Timmons*, *South Carolina Green Party*, and *Johnson*, the political parties sought to nominate candidates who ran in a different party's primary. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 354 (1997); *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 755 (4th Cir. 2010); *Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 930-31 (6th Cir. 2013). In *Storer* and *Van Susteren v. Jones*, the parties were not involved in the challenge. *See Storer v. Brown*, 415 U.S. 724, 726-27 (1974); *Van Susteren v. Jones*, 331 F.3d 1024, 1025 (9th Cir. 2003). And in *Gant* the nominee was a member of a different political party, not an independent. *See S.D. Libertarian Party v. Gant*, 60 F. Supp. 3d 1043, 1044 (D.S.D. 2014). The issue before us would seem to be a matter of first impression under federal law.

[49]  We have described this analysis as two steps: whether the right is

(continued...)

on associational rights, we evaluate "whether the challenged legislation actually advances those interests without unnecessarily restricting the political parties' right[s]."[50] " '[I]t is not sufficient for the [S]tate to assert theoretical possibilities, albeit undesirable ones, to justify incursions upon free speech rights protected by the Alaska Constitution.' Instead, the [S]tate must explain why the interests it claims are concretely at issue and how the challenged legislation advances those interests."[51] When reviewing "the adequacy of the [S]tate's explanation, a court must ask not 'in the abstract . . . whether fairness, privacy, etc., are highly significant values[ ] but rather . . . whether the *aspect* of fairness, privacy, etc., addressed by the law at issue is highly significant.' "[52]

If the challenged law advances the relevant aspect of a compelling state interest, we must weigh the fit between the law and that interest to ensure that the law is not overly restrictive of the protected rights.[53] Because election decisions necessarily involve judgment on matters of policy ill-suited to judicial second-guessing, we usually defer to the legislature's election decisions by reviewing the fit for reasonableness.[54]

---

[49] (...continued) sufficiently important and whether it is narrowly tailored. But in this case the Democratic Party concedes, and we agree, that each of the State's asserted interests are compelling, so we analyze these steps together.

[50] *Green Party I*, 118 P.3d at 1065.

[51] *Id.* at 1066 (footnote omitted) (quoting *Vogler v. Miller* (*Vogler II*), 660 P.2d 1192, 1196 (Alaska 1983) (Rabinowitz, J., concurring)).

[52] *Id.* (omissions, emphasis and second alteration in original) (quoting *Cal. Democratic Party v. Jones*, 530 U.S 567, 584 (2000)).

[53] *See State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 980-81 (Alaska 2005).

[54] *See id.* at 981.

Whether the challenged law is "in the mainstream of the practices of other states" is relevant, but not outcome determinative, in assessing reasonableness.[55]

The State claims compelling, narrowly tailored interests in ensuring sufficient public support for political parties and candidates, preventing voter confusion, and promoting political stability. We address each asserted interest in turn.

### 1. The party affiliation rule does not advance the State's interest in ensuring public support for the Democratic Party.

The State's first asserted interest is in ensuring public support for recognized political parties.[56] The State argues that it makes sense to confer benefits to recognized political parties only if they have significant public support. And because public support for a political party is measured by the strength of the candidates it nominates,[57] the State claims it can ensure that a political party has public support only if the party and candidate are linked through the party affiliation rule. We are

---

[55] *See id.* (upholding three percent eligibility threshold "[i]n light of the deference we accord to the legislature on such issues, *and* because the three percent figure remains in the mainstream of the practices of other states" (emphasis added)); *Green Party of Alaska v. State* (*Green Party II*), 147 P.3d 728, 736 (Alaska 2006) ("[W]e concur with the superior court that Alaska's requirements are 'within the mid-range' of other states, *and* that the legislature acted reasonably in using this standard to determine party eligibility." (emphasis added)); *see also Vogler II*, 660 P.2d at 1196 (Rabinowitz, J., concurring) ("I do not join in the court's intimation that the [S]tate could meet its burden of justifying [its law] merely by citing the existence of arithmetically similar statutes in the other jurisdictions. Other states are different geographically from Alaska, have different voter populations, are governed by their own unique constitutional guarantees and have statutory patterns of election laws that may vary substantially from that in Alaska.").

[56] *See supra* p. 3.

[57] *See supra* note 7 and accompanying text.

unconvinced.  The flaw in the State's argument is that the "link" between candidate and political party does not depend on party registration status.

The State claims that the party affiliation rule is necessary because "[w]hen a Democrat wins the Democratic primary, is listed on the general election ballot as a Democrat, and wins over voters as a Democrat, those votes reasonably — albeit roughly — approximate public support for the Democratic Party."  But as the Democratic Party points out, inquiry into voter motivations is inherently speculative:  "[T]he State cannot reasonably discern whether a vote for an individual candidate is motivated by support for the [Democratic] Party, support for the [Democratic] Party's policy platform, support for the candidate, in opposition to another candidate that the voter does not want to see elected, or some combination of the above."  Because the State does not know the reasons underlying a vote in an open primary election, and even more so in a combined-ballot primary election, the claim that the party affiliation rule allows it to use candidate support as a proxy for party support is illusory.  Rather, as the Democratic Party argues, "support for the candidate is imputed to the party because the party has associated with the candidate as its nominee."  A candidate need not be a registered party member for this imputation to occur.

The State counters that, at least to some degree, registration with a political party means the candidate "identifies with the party and advocates its views" and that voters logically assume this to be true.  But the State cannot show this to be true or even likely.  As the United States Supreme Court has noted, "the act of formal enrollment or public affiliation with [a] [p]arty is merely one element in the continuum of participation in [p]arty affairs, and need not be in any sense the most important."[58]  Given the ease of

---

[58]     *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 215 (1986).

registration and the lack of party vetting to run as a registered candidate in Alaska,[59] a candidate who does not support a party's principles or platform could run in a primary as a registered party candidate just as easily as a registered independent candidate. A registered independent candidate could be even more involved with the party and support more of the political party's principles and elements of its platform than a registered party candidate. The party affiliation rule does not "concretely" advance the State's interest.[60]

### 2. The party affiliation rule is not narrowly tailored to ensuring that candidates have sufficient public support.

The State's next asserted interest is in ensuring that candidates demonstrate public support before the State places their names on the general election ballot. The State argues that the party affiliation rule is "integral" to ensuring that candidates demonstrate a "significant modicum of support" because the State's recognition of an official political party allows it to impute party support to the candidate as a proxy for candidate support. The State argues that it "cannot infer support for the candidate" if the primary winner disavows the political party by refusing to register with it.

We do not find the party affiliation rule a reasonable method of ensuring candidate support. As a threshold matter, the State's interest in ensuring a "modicum of support" is not an important interest in and of itself. As we have explained, the interest in ensuring public support for candidates is grounded in "an interest 'in avoiding

---

[59]    *See* AS 15.25.030(16) (requiring declaration candidate is "registered to vote as a member of the political party whose nomination is being sought"); AS 15.07.050(c) (permitting supply of voter registration application indicating political party or group to voter affiliated with said political party or group); AS 15.07.070(c) (directing voter registration applications completed 30 days before election to be placed on official registration list).

[60]    *See Green Party I*, 118 P.3d 1054, 1066 (Alaska 2005).

confusion, deception, and even frustration of the democratic process at the general election' " through frivolous or fraudulent candidates.[61] The State's asserted interest in ensuring a modicum of support thus is valid only so far as the party affiliation rule advances the underlying interests in avoiding confusion, deception, and frustration of the democratic process at general elections.

Properly grounded in these interests, the party affiliation rule is not narrowly tailored to the State's asserted interest. The party affiliation rule is simply unnecessary in most cases; there generally is no need to impute political party support in a contested primary election because candidate support is demonstrated by the voters' selection of the candidate as the political party's nominee. The State's interest comes into play only in an uncontested or low-turnout primary election, in preventing a rogue candidate from slipping onto the general election ballot as a political party candidate. But even if this edge-case scenario occurred with sufficient regularity to warrant concern, the State has taken no action to prevent it; under the current statutory scheme, an unaffiliated voter could just as easily register as a party member and win as a rogue candidate in an uncontested or low-turnout election.[62] The State's assertion that the party affiliation rule is necessary to stop this deception does not withstand reasonable scrutiny.

### 3. The party affiliation rule is not narrowly tailored to prevent voter confusion.

The State next argues that the party affiliation rule helps prevent voter confusion arising from independent candidates running under a political party's banner.

---

[61] *See State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 980 (Alaska 2005) (quoting *Vogler II*, 660 P.2d 1192, 1195 (Alaska 1983)); *see also Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

[62] *See* AS 15.07.040 ("A person who is qualified . . . is entitled to register at any time throughout the year . . . .").

The State first explains that the primary election ballot, which can include multiple parties,[63] is designed to include only each candidate's name and political party designation. The State thus concludes that voters will find it impossible to tell which primary election an independent is running in on a combined primary ballot. The State next explains that the general ballot, mandated by statute, lists each candidate by name and associated political party.[64] The State thus concludes that the general election ballot will either present independent candidates without indicating that a party nominated them, a deceptive bait-and-switch, or present candidates as both independent and political party nominees, which will be "linguistically confusing, deceptive, or both." We are not persuaded by either argument.

On the primary election ballot, the State could simply print next to each candidate's name the political party whose primary election the candidate is running in. On the general election ballot, the State could simply print the nominating party's name next to the candidate's name. The State appears to concede that the primary election ballot can be redesigned, but it is unsatisfied with the resulting general election ballot. The State argues that the possible descriptors for a candidate's party affiliation — such as "nonpartisan," "undeclared," "non-affiliated," or "independent" — are by definition inaccurate, and that whichever word is chosen will cause voter confusion or deception. But we believe the State's concerns underestimate the Division of Elections and Alaska voters' common sense.

---

[63] *See Green Party I*, 118 P.3d at 1070 (holding that parties have right to combine ballots with each other).

[64] *See* AS 15.15.030(5) ("The names of the candidates and their party designations shall be placed in separate sections on the state general election ballot under the office designation to which they were nominated. The party affiliation, if any, shall be designated after the name of the candidate.").

In *Green Party I* we expressed confidence in Alaska voters, reasoning that "given that Alaska's blanket primary system caused little apparent voter confusion, [there is] no basis for predicting that Alaska voters might be incapable of understanding combined ballots."[65] This case is no different. We are confident the Division of Elections will be able to design a ballot that voters can understand. And if the State remains convinced that the ballot design itself will be confusing, it has several other options to adequately inform the public. The ballot could include prominent disclaimers explaining that a candidate's party affiliation denotes only the candidate's voter registration and nothing more.[66] The candidate's party affiliation as distinct from nominating party could be explained in the candidate's statement in the general election pamphlet.[67] The political party could also promote or distance its platform, tenets, and philosophy from a candidate's through a paid advertisement in the pamphlet.[68] And the State could choose to educate the public about new ballots through advertising or explanatory materials, such as the general election pamphlet.[69] The State provides no basis for predicting that Alaska voters will be unable to understand a Democratic Party nominee who nonetheless is, for voter registration purposes, an independent voter. The

---

[65]     118 P.3d at 1068.

[66]     *See* AS 15.15.030 ("The director shall prepare all official ballots to facilitate fairness, simplicity, and clarity in the voting procedure, to reflect most accurately the intent of the voter, and to expedite the administration of elections.").

[67]     *See* AS 15.58.030 (directing parameters of candidate's statement).

[68]     *See* AS 15.58.040 (permitting political party to generally promote its candidates).

[69]     *See* AS 15.58.020(a)(9) (designating information to be provided in general election pamphlet, including "additional information on voting procedures that the lieutenant governor considers necessary").

State's bare assertion of an abstract interest in deterring voter confusion and deception is therefore insufficient to support the party affiliation rule's substantial burden.[70]

### 4. The party affiliation rule either does not advance or is not narrowly tailored to promoting political stability interests.

The State's final interest is in "the stability of its political system." The State argues the party affiliation rule promotes political stability by "protecting the integrity of the State's two routes to the general election ballot, preserving party labels as meaningful sources of information for voters, and maintaining political parties as viable and coherent entities." We conclude that the party affiliation rule either does not advance these interests or is not narrowly tailored to advancing them.

First, the party affiliation rule does not advance the integrity of the two routes to the ballot. In *Green Party I* we held that the combined-ballot ban was not justified solely because the State had an interest in "nominating 'party candidates through a primary election rather than through direct party selection of candidates.' "[71] We reasoned that this interest, while "clearly legitimate," was "not concretely at issue"

---

[70] *See Green Party I*, 118 P.3d at 1068. The State argues in passing that we should identify at least one ballot that could survive a pre-election challenge and not be unduly confusing. But designing ballots is committed to the Division of Elections, not to us. *See* AS 15.15.030(1). And to the extent the State is concerned it will not be able to complete pre-election litigation of the ballot design before November elections, this concern is unfounded. *See Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Lake & Peninsula Borough*, 262 P.3d 598, 601 n.19 (Winfree, J., dissenting) ("It is not uncommon for us to consider a case on an expedited basis and issue a summary dispositional order with an opinion to follow . . . ." (citing *Miller v. Treadwell*, 245 P.3d 867, 867, 874 (Alaska 2010) (ordering expedited briefing, holding oral argument, and issuing opinion within 12 days of superior court's contested election case decision); *Keller v. French*, 205 P.3d 299, 299, 301-02 (Alaska 2009) (ordering expedited briefing, holding oral argument, and issuing dispositive order within one week of appeal in high-profile political dispute, with full opinion following later))).

[71] 118 P.3d at 1066.

because a challenge to "the way the primary election is conducted" does not implicate the State's interest in holding primaries.[72] The same reasoning applies here. The State clearly has a legitimate interest in having primary elections for candidates associated with a political party and petitions for candidates not representing a political party. But, as explained above, an independent candidate associates with the Democratic Party simply by running in its primary. The two nomination methods' integrity is not under threat because the primary route to the general election ballot remains solely for candidates associated with a political party. In the State's words, there still remain "two distinct routes to the general election ballot — one for party candidates and one for non-party candidates."

Second, the party affiliation rule is not a reasonable way of maintaining political party labels' informational value for voters. The State asserts that an independent candidate chosen by independent voters cannot represent the Democratic Party message when the candidate runs under the Democratic Party's label. This is true to a point: "To the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise."[73] But it is also somewhat beside the point. At the political party level, the State's desire to "protect[] the integrity of the Party against the Party itself" is not a legitimate motivation.[74] The State cannot force the Democratic Party to favor certain viewpoints for the sake of the State's political system. And at the general election level, political parties may already choose to nominate their candidates by

---

[72]    *Id.*

[73]    *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986).

[74]    *See id.* at 224.

seeking the input of voters who are independent, or even from other parties.[75] We cannot say that requiring a candidate to adopt a political party label will do anything to make candidates more representative of the views the State believes that political party represents. The party affiliation rule is not a reasonable way of preserving the informational value of party labels.

Finally, the State has not met its burden of showing that the party affiliation rule is a reasonable and necessary way of preserving the viability of political parties. The State asserts that the party affiliation rule is necessary for executive branch candidates to represent the majority of the people and for legislative branch candidates to organize themselves into "coherent groups." The State asserts that losing the party affiliation rule will "erode the functioning of a democracy and undermine voters' faith in it." But the State does not explain why this outcome is likely to occur beyond the bare assertion that it will, and "it is not sufficient for the [S]tate to assert theoretical possibilities, albeit undesirable ones, to justify incursions upon free speech rights protected by the Alaska Constitution."[76] Absent further explanation, we see no basis for concluding that the party affiliation rule is what ensures the long-term stability of Alaska's political system. This interest cannot justify the substantial burden on the Democratic Party's associational rights.

## V.    CONCLUSION

For these reasons, we AFFIRM the superior court's judgment.

---

[75]    *See supra* p. 4.

[76]    *See Green Party I*, 118 P.3d at 1066 (quoting *Vogler II*, 660 P.2d 1192, 1196 (Alaska 1983) (Rabinowitz, J., concurring)).